1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF WASHINGTON

9

| | |
|---|---|
| Kevin H. Irelan, | ) |
| | ) No. CV-06-00007-MWL |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

16

17    BEFORE THE COURT are cross-Motions for Summary Judgment,

18 noted for hearing without oral argument on October 2, 2006. (Ct.

19 Rec. 13, 15).  Plaintiff Kevin H. Irelan ("Plaintiff") filed a

20 reply on October 2, 2006.  (Ct. Rec. 18).  Attorney Kathleen G.

21 Kilcullen represents Plaintiff; Special Assistant United States

22 Attorney Richard Morris represents the Commissioner of Social

23 Security ("Commissioner").  The parties have consented to proceed

24 before a magistrate judge. (Ct. Rec. 4).  After reviewing the

25 administrative record and the briefs filed by the parties, the

26 Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15)

27 and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

28 ///

**JURISDICTION**

On October 28, 2002, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since October 25, 2002, due to post traumatic stress disorder ("PTSD"). (Administrative Record ("AR") 83).  The applications were denied initially and on reconsideration.

On December 7, 2004, Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff, medical expert R. Thomas McKnight, Ph.D., and vocational expert William Weiss.  (AR 312-380).  On April 29, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 14-29).  The Appeals Council denied a request for review on December 5, 2005. (AR 5-7).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 56 years old on the date of the decision.  (AR 351, 15).

At the administrative hearing held on December 7, 2004, plaintiff testified that the last time he used alcohol was August 2004. (AR 316). However, plaintiff also testified that he occasionally has a beer. (AR 359).  Plaintiff testified that before April 2002 he smoked marijuana two to three times a week,

but later admitted he feels he can smoke marijuana if he wants to. (AR 319; 360).

Plaintiff testified that he had a high school education and two and a half semesters of college. (AR 351). He testified that he enlisted in the Army in 1966 where he served for three years, including one year in Viet Nam from March of 1967 until March 1968. (AR 351-352). Plaintiff stated that he last worked in October 2002. (AR 352). He left work at noon that day because he "got stressed to the point where [he] was physically ill and [he] just simply could not stay there any longer without probably hurting someone." (AR 352-353). Plaintiff has worked as a forklift operator, gutter installer, sand blaster, and care provider for his father. (AR 364-367). Plaintiff reported that he left his last job because he got tired of being physically sick at work every single day. His stomach was tied in knots, his blood pressure was "through the roof" and he physically couldn't handle it anymore. (AR 354).

Plaintiff testified that he takes medication to help him sleep but even with medication he sleeps maybe two to three hours a night. (AR 360-361). He stated that he has had problems with his hearing (tinnitus) since he was in the Army, and with carpal tunnel syndrome in both wrists for which he wear braces at night. (AR 370-371). His knees are "shot" and he has constant back pain. (AR 372). Plaintiff reported memory problems in that his wife needs to make a list of the things he needs to do. (AR 358). Plaintiff indicated that he feels "constantly kind of anxious" and kind of numb. (AR 358-359). He reported hating to be around people, daily recurrent memories, "blowing up" when something goes

wrong, and being disturbed by loud noises. (AR 355-356). Plaintiff stated that he has ongoing problems with being awakened by panic attacks. (AR 361).

Plaintiff reported that he could not relax enough to read. He generally leaves the house once a week to attend his support group but occasionally runs errands such as going to the lumber store. He watches television. (AR 362; 357-58).

Medical expert R. Thomas McKnight, Ph.D., and vocational expert William Weiss testified at the administrative hearing held on December 7, 2004. (AR 320-351; 373-379).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.

20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

     If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);

*Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, October 25, 2002. (AR 15, 28). At step two, the ALJ determined that

Plaintiff suffers from the severe impairments of degenerative joint and disc disease; depressive disorder, not otherwise specified (NOS) related to alcohol abuse; posttraumatic stress disorder (PTSD); and polysubstance abuse. (AR 28). The ALJ found that when the effects of substance abuse were included, plaintiff's impairments met three of the Listings for mental impairments: 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders). (AR 28). The ALJ found plaintiff's polysubstance abuse material to finding disability, and found that when using alcohol and/or drugs, plaintiff would be precluded from competitive employment. (AR 28). The ALJ determined that absent polysubstance abuse, plaintiff does not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments. (AR 29).

The ALJ concluded that plaintiff has the RFC to perform work at all levels of exertion but with no more than occasional kneeling, crawling, crouching and stooping. (AR 29). The ALJ found that absent substance abuse, plaintiff is slightly to moderately limited in accepting instructions and responding appropriately to supervisors. (AR 27). He is slightly limited in the areas of memory and understanding, sustained concentration and persistence, social interaction and adaptation to work environments. (AR 27). At step four of the sequential evaluation process, the ALJ found that with this RFC, the plaintiff is able to perform his past relevant as a forklift operator. (AR 28, 29). Because the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act, she was not required to

proceed to step five. (AR 29).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that:

1. The ALJ erred by finding that substance abuse is material to determining plaintiff's disability;

2.   The ALJ erred by failing to properly credit the VA's disability determination;

3.   The ALJ erred by rejecting the opinions of treating physicians in favor of the opinion of the testifying medical expert, and in finding plaintiff less than fully credible; and

4.   The ALJ erred by failing to order additional psychological testing.

(Ct. Rec. 13, pp. 14-16, 21-25).

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Effects of Drug and Alcohol Abuse**

Plaintiff contends that the ALJ erred by placing too much weight on the effects of substance abuse on his limitations, particularly in view of his diagnosis of PTSD. (Ct. Rec. 13, pp. 14-17). The Commissioner responds that the ALJ properly determined that benefits are barred when a claimant is unable to work due to a medically determinable impairment and drug addiction and/or alcoholism is a contributing factor material to determining disability. (Ct. Rec. 16, pp. 8-14).

The ALJ found that the record reflects that plaintiff suffers from the severe impairments of degenerative joint and disc disease, depressive disorder not otherwise specified ("NOS") related to alcohol abuse, posttraumatic stress disorder ("PTSD"), and polysubstance abuse. (AR 28). (The ALJ's findings with respect to joint and disc disease are not challenged).  The ALJ determined that plaintiff's mental impairments, absent drug and alcohol abuse, result in only slight limitations in the ability to understand and remember, to sustain concentration and persistence, to interact socially and to adapt to work environments. (AR 27). The ALJ determined that plaintiff, absent drug and alcohol abuse, is slightly to moderately limited in the ability to accept instructions and to respond appropriately to criticism from supervisors. *Id.*

The Social Security Act bars payment of benefits when drug addiction and/or alcoholism ("DAA") is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d) (2) (C) and 1382 (a)(3)(J); *Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998).  "Material" means that the individual would not be found disabled if he stopped using drugs and/or alcohol.  Contrary to his assertion, Plaintiff has the burden of showing that his DAA is not a contributing factor to disability. *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001).  If there is evidence of DAA and the individual succeeds in proving he is disabled, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with

the analysis to determine whether alcoholism is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ must proceed to determine if the claimant would be disabled if he stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F. 3d 949 (9th Cir. 2001).

In this case, the ALJ evaluated the evidence of record, considered the hearing testimony of plaintiff and the expert witnesses and concluded plaintiff is disabled when the effects of ongoing DAA are considered, but when plaintiff's limitations absent DAA are considered, he has the residual functional capacity to perform past relevant work. (AR 22, 27-28).

Based on the substantial weight of the record, the ALJ determined that plaintiff would not be disabled if he stopped using alcohol or drugs. (AR 25, 29). In reaching this conclusion, the ALJ relied on plaintiff's statement to the VA following his hospitalization in April of 2003 that "he felt he was managing his symptoms more effectively and found peer support and remaining active to be especially helpful." (AR 18, 25). The ALJ observed that plaintiff's discharge report indicates he was in good spirits and in stable condition. (AR 19). The ALJ relied on the fact that during his hospitalization plaintiff was noted to be alert with no cognitive deficits and was able to interact well with staff and other patients. (AR 18, 25). The ALJ noted that during plaintiff's hospitalization he was not ingesting alcohol or smoking marijuana, whereas when he is drinking he has greater cognitive and social difficulties. (AR 25). The ALJ considered Dr. Rowe's opinion that plaintiff's substance abuse contributed to

his symptoms of depression. (AR 21).  The ALJ relied on the
opinion of the testifying medical expert, Dr. McKnight, who
reviewed all of the records and opined that plaintiff's substance
abuse materially contributed to his finding of disability and that
if plaintiff stopped abusing substances he would be able to work
because his mental limitations were only slight to moderate. (AR
22-23, 27).  Dr. McKnight's opinion is consistent with other
competent evidence in the record.

Plaintiff's voluminous attachments outlining the frequency
with which PTSD sufferers also abuse substances does not change
the analysis. The ALJ was required to determine whether plaintiff
has severe limitations if he does not abuse substances; the fact
large numbers of people suffer from both PTSD and substance abuse
is not probative to the legal issues before the ALJ. The ALJ did
not err in relying on Dr. McKnight's opinion, on plaintiff's
hospital records, and on the opinion of Dr. Rowe in making her
determination that if plaintiff stopped using alcohol and
marijuana he would not be disabled.

**B.  VA Disability Determination**

Plaintiff contends that the ALJ erred by failing to properly
consider the VA's 70% disability determination. (Ct. Rec. 13, pp.
18-19).  The Commissioner responds that, while the ALJ must
ordinarily give great weight to the VA rating, the VA and SSA
criteria are not identical, and the ALJ may give less weight to
the VA rating if he gives persuasive, specific valid reason that
are supported by the record. (Ct. Rec. 16, pp. 15-16), *citing*
*McCartey v. Massanari*, 298 F. 3d 1072, 1076 (9th Cir. 2002).

The ALJ is not required to give great weight to a VA rating

if the decision adequately explains the valid reasons for not
doing so. *Id*. In this case the ALJ observed that the VA's 70%
disability determination took into account plaintiff's drug and
alcohol addiction. (AR 21, 25). The ALJ reached this conclusion
because VA physician Dr. Hohenegger's diagnosis includes
alcohol/cannabis abuse. (AR 24). The ALJ agreed with the VA's
assessment that plaintiff is disabled when abusing substances. (AR
25).  The ALJ recognized, however, that the SSA regulations
(unlike the those of the VA) require her to consider plaintiff's
limitations absent his substance abuse. (AR 24).  While plaintiff
was hospitalized and substance free, the ALJ noted that he was
reported to be alert with no cognitive deficits and able to
interact well with staff and other patients. (AR 25).  The ALJ's
duty to consider the effects of alcohol and drug abuse when
determining disability and plaintiff's apparently mild limitations
when substance free adequately explain the ALJ's valid reasons for
giving little weight to the VA's disability determination. *See*
*McCartey v. Massanari*, 298 F. 3d at 1076 (9th Cir. 2002).

**C. Medical Professional Opinions and Credibility**

Plaintiff contends that the ALJ erred by giving greater
weight to the opinion of R. Thomas McKnight, Ph.D., than to the
opinions of J. Wayne Ball, MSW, LCSW and Miles Hohenegger, Ph.D.
(Ct. Rec. 13, pp. 18-20, 23-24).  The Commissioner responds that,
the ALJ properly relied on the testimony of the medical expert and
the opinion of Dr. Rowe that plaintiff's alcohol abuse contributed
significantly to his ongoing depressive symptoms. (Ct. Rec. 16,
pp. 16-18).

In a disability proceeding, the courts distinguish among the

opinions of three types of physicians:  treating physicians,
physicians who examine but do not treat the claimant (examining
physicians) and those who neither examine nor treat the claimant
(nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839
(9th Cir. 1996).  A treating physician's opinion is given special
weight because of his familiarity with Plaintiff and Plaintiff's
physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir.
1989).  Thus, more weight is given to a treating physician than an
examining physician.  *Lester*, 81 F.3d at 830.  However, the
treating physician's opinion is not "necessarily conclusive as to
either a physical condition or the ultimate issue of disability."
*Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations
omitted).  To reject the treating physician's opinion, the ALJ
must state specific, legitimate reasons that are supported by
substantial evidence.  *Flaten v. Secretary of Health and Human
Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.
Historically, the courts of the Ninth Circuit have recognized
conflicting medical evidence, the absence of regular medical
treatment during the alleged period of disability, and the lack of
medical support for doctors' reports that are based substantially
on Plaintiff's subjective complaints of pain, as specific
legitimate reasons for disregarding the treating physician's
opinion.  *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

     J. Wayne Ball, MSW, LCSW, of the VA believed that plaintiff
could not maintain competitive employment. (AR 290-292). Plaintiff
asks this court to accord to Mr. Ball the status of a treating
physician. (Ct. Rec. 13, pp. 23-24).  The Commissioner counters
that, as a social worker, Mr. Ball is not an acceptable medical

source who can provide evidence to establish impairment; rather, his statements are competent lay evidence that the ALJ must take into account. (Ct. Rec. 16 at 16).

While Mr. Ball opined that plaintiff suffers from depression and "rather severe PTSD" (AR 290), he is neither a physician nor a licensed or certified psychologist.  Therefore, the social worker's opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations.  20 C.F.R. §§ 404.1513, 416.913.  Moreover, as noted by the ALJ, Mr. Ball's report is based on plaintiff's self report and contains nothing that is based on his observations or testing. (AR 21). Although the ALJ did not reach the same conclusion as Mr. Ball with respect to plaintiff's employability, she similarly found that he suffered from both depression (NOS) and PTSD. In addition, the ALJ found that plaintiff's depression was related to alcohol abuse and he suffers from polysubstance abuse. (AR 28). The ALJ notes that Mr. Ball did not consider plaintiff's limitations without using drugs or alcohol. (AR 24).

Miles Hohenegger, Ph.D., completed a psychological evaluation of plaintiff on April 6, 2004. (AR 280).  Dr. Hohenegger reported that plaintiff stated he was using cannabis twice weekly and drank from one or two beers a day to three or four beers a day twice weekly. (AR 281).  The ALJ pointed out that Dr. Hohenegger did not consider whether plaintiff would suffer any limitations if he stopped using alcohol and marijuana. (AR 24).

On February 11, 2003, Thomas Rowe, Ph.D., examined Plaintiff. (AR 128-132).  Plaintiff told Dr. Rowe he drank a fifth of alcohol per week. (AR 131).  As the ALJ notes, Dr. Rowe diagnosed

plaintiff with PTSD with delayed onset, by prior diagnosis; major depressive disorder, recurrent, moderate, and alcohol abuse. (AR 17). The ALJ points out that "Dr. Rowe was of the opinion that the claimant's alcohol consumption does contribute significantly to his ongoing depressive symptoms and, if there is to be any hope of his recovering from his depression it will be necessary that he discontinue his alcohol consumption that is undoubtedly contributing to his depression." (AR 17). The ALJ noted that at the hearing plaintiff testified that he drinks a few beers and smokes marijuana. (AR 23). The ALJ further observed that Dr. Rowe opined that plaintiff "suffers from PTSD with accompanying depression and is also receiving considerable secondary gain for maintenance of his symptoms and questions his motivation for treatment, recovery and return to a productive lifestyle." (AR 17-18).

The ALJ considered the report by state agency consultant, Gerald Gardner, Ph.D., dated March 10, 2003. (AR 163). The ALJ notes that Dr. Gardner believed that the plaintiff suffers from affective disorders, anxiety-related disorders and substance addiction disorders which are severe but do not meet the listed requirements. (AR 18). Dr. Gardner notes the mental status examination shows intact cognition to understand and remember instructions and procedures; attention and concentration are grossly intact. Affective symptoms, such as PTSD related anxiety, may distract plaintiff at times. Dr. Gardner believed that socially plaintiff's behavior is grossly appropriate in contacts with professionals. He is likely prone to some withdrawn and irritable behavior, but can carry out less demanding task-related

social interactions in grossly appropriate fashion. (AR 18).
Tolerance for crowded public settings are likely limited. Dr.
Gardner opined that plaintiff's judgment is grossly intact and he
can make simple adjustments to change. (AR 18). His PTSD would
contribute to some mood reactivity to frequent change and high
levels of performance pressure. Dr. Gardner opined that plaintiff
can make a routine commute but would be uncomfortable with
frequent travel to unfamiliar settings. (AR 18).

Plaintiff was referred by his mental health counselor to
Janice Stern, MN, ARNP, for a pharmacotherapy evaluation and
treatment on January 6, 2004. (AR 233).  He reported drinking one
to two alcoholic drinks per day. (AR 233).  Ms. Stern reports that
plaintiff was cooperative and cordial, neatly groomed, and
displayed no psychomotor retardation or agitation. His mood was
mildly depressed and affect generally constricted. Plaintiff spoke
softly and at a normal rhythm and pace. (AR 233-234). His judgment
was unimpaired and Ms. Stern estimated that plaintiff is of at
least average intelligence. (AR 234). Plaintiff complained of
severe sleep disturbance since leaving the Army. (AR 233). He
reported flashbacks and bouts of severe depression over the years.
(AR 233).  Ms. Stern assessed PTSD, chronic and dysthymia, and a
history of major depression, recurrent. (AR 234).

At the December 17, 2004 administrative hearing, Thomas
McKnight, Ph.D., testified as a medical expert.  (AR 320-351).
Dr. McKnight stated that several diagnoses had been presented,
including cannabis dependence, alcohol dependence, depressive
disorder, NOS, post traumatic stress disorder, severe (but noted
there was no documentation that anyone observed symptoms that are

reasonably consistent with severe post traumatic stress disorder and it appeared to only be self-reported), and major depression disorder.  (AR 322-328).  Dr. McKnight indicated that the problem with the various diagnoses throughout the record was that they appeared to be based on self report and are inconsistent with the results of Dr. Hohenegger's mental status examination which showed that plaintiff appears to be functioning reasonably within the average range. (AR 325).

The ALJ acknowledged that plaintiff's polysubstance addiction would cause limitations meeting the criteria of three of the listed impairments. (AR 22).  However, the ALJ went on to perform the required analysis to determine what limitations would remain if plaintiff stopped abusing substances. Plaintiff initially testified that he last drank alcohol in August 2004 and last smoked marijuana prior to his hospitalization in April 2002. (AR 316, 318). He admitted later in the hearing that he continued to drink and to smoke marijuana. (AR 359-360).

Mr. Ball's opinion that plaintiff cannot work included the active use of drugs and alcohol. The ALJ agreed with Mr. Ball that when DAA is included, the plaintiff is disabled. The ALJ also agreed with Dr. Rowe that plaintiff's alcohol abuse contributes significantly to his depression.  The ALJ took note of plaintiff's testimony that when working he had never missed a day. (AR 26). The ALJ found that plaintiff suffers from polysubstance abuse as indicated by Dr. Hohenegger, and noted that plaintiff self reported difficulties to Dr. Hohenegger at the same time he acknowledged drinking and smoking marijuana. (AR 20, 24). The ALJ considered and in part agreed with the opinions of Mr. Ball, Dr.

Hohenegger, and Dr. Rowe. She considered plaintiff's testimony.
Although plaintiff asserts that the ALJ relied only on the opinion
of the testifying expert, Dr. McKnight, the record does not
support plaintiff's assertion.

As noted by the Commissioner, the ALJ determined that
Plaintiff was not entirely credible. (AR 24).  Plaintiff vaguely
contests the ALJ's negative credibility finding, alleging it is
based on "nothing more than speculation and hearsay followed with
implication." (Ct. Rec. 13, p. 23).  Plaintiff points to nothing
in the record supporting this argument.  When a claimant does not
seriously challenge the ALJ's credibility determination, medical
opinions based primarily on plaintiff's subjective complaints,
like Mr. Ball's report (even assuming that Mr. Ball is a an
acceptable medical source), are entitled to less weight.
*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a
physician's opinion may be disregarded when it is premised on the
properly rejected subjective complaints of plaintiff).

It is the province of the ALJ to make credibility
determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.
1995).  However, the ALJ's findings must be supported by specific
cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
1990).  Once the claimant produces medical evidence of an
underlying impairment, the ALJ may not discredit the testimony as
to the severity of an impairment because it is unsupported by
medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
1998) (citation omitted).  Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."  *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995).  "General findings are

insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that plaintiff is less than fully credible. (AR 24).  In support of this finding, the ALJ indicated that plaintiff has inconsistently reported substance abuse:

> He reported to Dr. Rowe on February 3, 2003, that he drinks one-fifth of whiskey per week and he smokes marijuana about once a month when it is offered to him by other people.  He reports in April 2003 that he has been smoking marijuana since 1967 and that "a couple of years ago" he smoked on a daily basis but over the past few years has been smoking "a couple of times per week." . . . He currently reports drinking infrequently, 2 beers over the past 2 weeks. It is noted the claimant tested positive for cannabinoids on urine panel screening. [AR 222][June 2003]. On April 16, 2004, the claimant reports alcohol consumption ranging between 2 to 3 beers per day to 3 to 4 beers per day two or three times a week along with twice weekly use of cannabis. . . In a Health Promotion Screening note dated May 28, 2004, . . . [i]t is noted that he drinks alcohol four or more times a week and on a typical day he drinks 1 or 2 times."

(AR 25).

The ALJ further found that plaintiff's apparent good functioning when not abusing substances (as evidenced by his hospital records), his ability to perform carpentry work around the house, his improvement in sleep reported in March and May 2004, his statement that he never missing a day when working, and the motive for financial gain all diminished plaintiff's credibility with respect to his claim of disabling impairments absent drug and alcohol abuse (AR 26-27).  The ALJ correctly identified the testimony she found less than credible and pointed to the evidence which undermined plaintiff's credibility. The undersigned finds that the ALJ's credibility determination is supported by the evidence of record.

Plaintiff also argues that, because Dr. McKnight lacks specific credentials in the area of PTSD, the ALJ should not have relied on his testimony. (Ct. Rec. 18, pp. 5-6). The Commissioner responds that this argument was waived because at the hearing plaintiff said that he had no objection to Dr. McKnight testifying as a medical expert and did not question his qualifications. (Ct. Rec. 16, pp. 13-14). The Commissioner is correct. Without giving the ALJ an opportunity to rule on such an objection, plaintiff waived the argument.

The court finds that the ALJ reasonably relied upon Drs. McKnight and Rowe's opinions in making her conclusions in this case. Moreover, the Court finds that the ALJ provided specific and legitimate reasons for rejecting the findings of Mr. Ball and other VA practitioners. *See Tonapetyan, supra.* Accordingly, the ALJ did not err, as alleged by plaintiff, by partially rejecting the opinions of plaintiff's treating practitioners in favor of the evaluation completed by Dr. Rowe and the testimony of Dr. McKnight in this case.

**D. Further Testing**

Plaintiff contends that the ALJ erred by failing to order further testing, specifically, the Millon Clinical Multiaxial Inventory ("MCMI-II). (Ct. Rec. 13 pp. 22, 25). The Commissioner responds that the ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or the record is inadequate to allow for proper evaluation of the evidence, and in this case neither warranted further testing. (Ct. Rec. 16, pp. 21-22).

The ALJ asked Dr. McKnight if additional expert evaluation would be warranted. He replied that the record was fairly

extensive; as the Commissioner notes, the doctor gave this answer in the context of testifying that the VA records did not document significant impairment, absent the impact of drugs and alcohol. (AR 323-326); (Ct. Rec. 16, p. 22).

The record was adequate to permit the ALJ to properly evaluate the evidence in this case. There was no ambiguity triggering the need for additional testing. Accordingly, the ALJ did not err by refusing to order additional testing.

The ALJ evaluated the evidence of record, considered the hearing testimony of plaintiff and the medical experts, and concluded that, absent substance abuse, plaintiff's mental impairments caused no more than slight limitations in all areas of workplace functioning with the exception of a slight to moderate limitation in accepting instructions and responding appropriately to criticism from supervisors. (AR 27). The undersigned finds that the evidence of record supports the ALJ's determination.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that plaintiff, if not abusing drugs or alcohol, is capable of performing his past relevant work as a forklift operator is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (Ct. Rec. 13) is **DENIED.**

2.    Defendant's Motion for Summary Judgment (Ct. Rec. 16) is **GRANTED.**

3.    The District Court Executive is directed to enter

judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

     **DATED** this 7th day of December, 2006.

                                                s/Michael W. Leavitt
                                               MICHAEL W. LEAVITT
                                   UNITED STATES MAGISTRATE JUDGE